CAMPBELL *v.* JENIFER ET AL.
JENIFER ET AL. *v.* CAMPBELL

[No. 165, September Term, 1959.]

(Two Appeals In One Record)

*Decided March 17, 1960.*
*Motion for rehearing filed April 14, 1960, denied May 11, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Robert S. Rody,* with whom were *Richard D. Payne* and *MacDaniel & Payne* on the brief, for Joseph F. Campbell, one of the appellants.

*Max Sokol,* with whom were *Dickerson, Nice & Sokol* and *Melvin J. Sykes* on the brief, for James Martin Shaunessy, appellee.

*Foster H. Fanseen,* with whom were *Ginsberg & Ginsberg* and *Hyman Ginsberg* on the brief, for Bond Lumber Company and James Jenifer, appellees and cross-appellants.

HORNEY, J., delivered the opinion of the Court.

Joseph F. Campbell (plaintiff)—claiming that he had been struck and injured by one or both of two motor vehicles while he was walking across North Avenue in Baltimore in broad daylight—sued James M. Shaunessy (Shaunessy), the operator of the automobile involved in the accident, and James A. Jenifer (Jenifer) and the Bond Lumber Company (Bond), the operator and owner, respectively, of the truck also involved in the accident. When the Superior Court of Baltimore City granted a motion for a directed verdict and entered a judgment for costs in favor of Shaunessy and later granted a motion for and entered a judgment *n.o.v.* in favor of Jenifer and Bond, the plaintiff appealed from the entry of

the judgment *n.o.v.*, though not the judgment for costs entered on the directed verdict, and Jenifer and Bond cross-appealed from the judgment for costs.

In the late afternoon of October 5, 1957, the plaintiff was crossing North Avenue about half way between Bolton Street and Linden Avenue when the accident occurred. In the center of the avenue there was a raised narrow concrete median strip or island dividing east-bound and west-bound traffic. The avenue was wide enough on each side to accommodate two lanes of moving traffic and a lane of parked vehicles. Prior to the accident the plaintiff had been in a bar on the south side of the avenue where, according to his testimony, he had three shots of whiskey and a large bottle of beer. He admitted feeling the drinks, but thought he knew what was going on when he undertook to cross the avenue from south to north. There was other evidence both that he appeared to be sober and that he was highly intoxicated.

Shaunessy, operating the automobile in a westerly direction in the lane nearest the north side of the median strip, noticed the plaintiff as he came through the intersection at Bolton Street and saw him again when he was from six to ten feet away, staggering or walking somewhat irregularly across the east-bound traffic lanes with his hands to his head. In an attempt to avoid striking the plaintiff, Shaunessy applied his brakes, slowed down and gradually came to a complete stop. The plaintiff, continuing on his course, stepped or staggered up on the median strip with one hand in front of his face. As the truck collided with the automobile, he (the plaintiff) appeared to wake up, threw up his hands, and as the automobile, which was propelled forward by the impact of the truck, came opposite the plaintiff, he fell on the left front fender. Jenifer, who was following in the truck in the same lane close behind the automobile, did not see the plaintiff, but frankly acknowledged seeing Shaunessy slow down and stop. He also admitted that as the automobile was slowing the truck collided with the rear end of the automobile. Besides the automobile and truck involved in the accident, there was both traffic ahead of them in the same lane and still other traffic traveling both east and west.

The evidence as to how the accident actually happened was conflicting. In addition to the testimony that the plaintiff walked or fell into the left side of the automobile, there was testimony to the effect that the plaintiff was struck by the front of the automobile. Other testimony indicates that the striking occurred before the truck ran into the automobile. According to the testimony of the plaintiff, he did not step from the median strip until the automobile had come to a stop and, as he put it, until Shaunessy had ceded him the right of way. He further testified that it was the collision of the truck with the automobile which caused the automobile to move forward and strike him. But on cross-examination, although he remembered falling down and sliding in front of the automobile, the plaintiff admitted he did not know how the accident happened. In any event, he was thrown back across the median strip into the nearest east-bound traffic lane.

The principal question on these appeals is whether the trial court erred when it ruled (i) that there was no evidence of negligence on the part of Jenifer and Bond and (ii) that the plaintiff was guilty of contributory negligence. If we should rule that the court erred in granting the motion for a judgment *n.o.v.*, there is the further question of whether the trial court should have also permitted the case to go to the jury with respect to Shaunessy.

In a case such as this, where the trial court has granted either a motion for a directed verdict, or a motion for a judgment *n.o.v.*, this Court must, in determining whether the ruling was proper, resolve all conflicts in the evidence in favor of the plaintiff and assume the truth of all evidence and such inferences as may naturally and legitimately be deduced therefrom which tend to support the right of the plaintiff to recover. Or, as it is often stated, the evidence must be considered in the light most favorable to the plaintiff. *Baer Brothers, Inc. v. Keller,* 208 Md. 556, 119 A. 2d 410 (1956) ; *Sun Cab Co., Inc. v. Cialkowski,* 217 Md. 253, 142 A. 2d 587 (1958).

The plaintiff contends that the cumulative effect of the evidence, if it had been construed in a light most favorable to

him,[1] was sufficient for the jury to consider the question of negligence in the case against Jenifer and Bond. We do not agree.

Of course, a pedestrian who crosses a street between crossings is not negligent *per se,* but, in so doing, he must use the greatest of care for his own protection. *Henderson v. Brown,* 214 Md. 463, 135 A. 2d 881 (1957). Thus, the law required the plaintiff in this case to accommodate himself to the vehicular traffic between street crossings in the moving traffic lanes on North Avenue and to refrain from disputing the right of way with any of such traffic. *Love v. State, Use of Nelson,* 217 Md. 290, 142 A. 2d 590 (1958); *Henderson v. Brown, supra.* Yet, it appears that the plaintiff did none of the things a rational man would have done under similar circumstances to protect himself from injury, which strongly suggests that he might not have been as sober as he thought he was. He admitted that he did not see the truck which was following the automobile at a distance estimated to be from ten to fifteen feet, and apparently, other than the automobile which came to a stop, he did not see any of the other traffic which, according to the testimony, was also moving in both directions.

Under such circumstances, even if we assume, without deciding, that Jenifer and Bond were guilty of negligence in that they caused the truck to propel the automobile forward so as to strike and injure the plaintiff, we think there is not the slightest doubt that the plaintiff was contributorily negligent as a matter of law when he elected to leave a place of safety for a position of peril and contest the right of way of the vehicular traffic then between street crossings in the west-bound lanes of the avenue. See *Dean v. Scott,* 196 Md. 70, 75 A. 2d 83 (1950), *Jackson v. Forwood,* 186 Md. 379, 47 A. 2d 81 (1946) and *Jendrzejewski v. Baker,* 182 Md. 41, 31 A.

---

1. Such as—that the plaintiff, though he had been drinking, was in control of himself as he walked across the avenue — that he stopped on the median strip until the automobile slowed down and stopped—that the automobile thereby ceded him its right of way— and that he was struck down as he was passing in front of the automobile as a result of the truck colliding with the automobile and propelling it forward.

2d 611 (1943) [holding that walking from a place of safety into a position of peril constitutes contributory negligence as a matter of law]. And see *Love v. State, Use of Nelson, supra,* and *Henderson v. Brown, supra* [holding that the law requires a pedestrian to know he cannot dispute the right of way with vehicular traffic between intersections]. See also Code (1957), Art. 66½, sec. 236 [vehicles have right of way between street crossings in towns and cities].

Furthermore, even if the plaintiff was so naive as to believe that Shaunessy had yielded his right of way on one of the busiest thoroughfares in Baltimore to accommodate the plaintiff, he certainly had no right to assume that other vehicular traffic on the avenue would do likewise. The case of *Ebert Ice Cream Co. v. Eaton,* 171 Md. 30, 187 Atl. 865 (1936), relied on by the plaintiff to support the contrary, is clearly distinguishable on the facts. There, the jaywalker, who had observed the moving traffic while crossing the two-way street in front of it, left a potential position of peril as he crossed the center line of the street on to what might have been a place of safety if the ice cream truck had not pulled to the left of the center of the street and attempted to pass when the way ahead was not clear. Here, the jaywalker, who had not seen any of the moving traffic, left a place of absolute safety on the median strip and walked or fell into a position of peril when he attempted to cross the remainder of the six-lane avenue against the moving traffic which had the right of way.·

We have repeatedly held as was stated in *Love v. State, Use of Nelson, supra,* at p. 297, that "a pedestrian crossing a street between intersections is guilty of contributory negligence if he fails to look for approaching motor vehicles, or, if having looked, he fails to see such a vehicle, and so fails to guard against being struck by it." This rule of law is applicable here. The judgment *n.o.v.* in favor of Jenifer and Bond will therefore be affirmed.

With this holding it is conceded that we need not consider the question concerning the judgment for costs in favor of Shaunessy, and that judgment will likewise be affirmed.

> *Judgments affirmed, the appellant Campbell to pay the costs.*