LEONARD, Infant, by Wilbur Ross Leonard, his
father and next friend, and Wilbur Ross
Leonard *v.* BRATCHER

[No. 358, September Term, 1969.]

*Decided May 11, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*James J. White, III,* for appellants.

*Clayton C. Carter* for appellee.

FINAN, J., delivered the opinion of the Court.

At about 6:30 in the evening on July 5, 1966, Arthur Joseph Leonard (hereinafter "AJ"), a fourteen year old boy, was playing "catch" with his brother Billy in the front yard of their family home near Kingstown, Queen Anne's County. "AJ" was standing in the driveway near the westerly side of the highway which leads to Chestertown. He was holding onto a twenty-two inch high "mini" bicycle while tossing the ball back and forth. At one point the ball got away from him and rolled up the highway. In pursuit of the ball, he pedalled up the southbound lane of the hard surfaced road in a southerly direction for at least 150 feet. When he started out he did not know where the ball was. He did know it was across the road. Deciding to cross over, he looked back over his left shoulder, saw no traffic behind him and looked forward where he said he could see "about five miles of straight road, you can see as far as you can." He testified he saw no oncoming vehicles. His own description of his conduct at this point is, "then I cut across the road." In the process he was struck by a northbound vehicle. The impact occurred in the middle of the northbound lane. "AJ" gave

no signal indicating that he was turning across the road, because, as he testified, "I didn't see any cars so I thought it wasn't necessary."

There was testimony to the effect that the operator of the motor vehicle did not sound his horn or swerve to avoid the collision by directing his vehicle onto the gravel shoulder or into the clear left lane. The testimony based on the observation of skid marks indicated that the operator of the vehicle applied the brakes fifteen to twenty-five feet before the point of impact. After the impact the car continued about 150 to 200 feet striking a speed sign along the side of the highway before coming to a stop. There were no skid marks after the point of impact.

The identity of the operator of the car as between Mr. Randolph Elgie Bratcher, defendant-appellee, and Mrs. Betty Ann Bratcher, who was also a defendant below, was disputed. The appellant claimed Mr. Bratcher was driving the car while the appellee maintained Mrs. Bratcher was the operator. There was evidence that Mr. Bratcher had been drinking. In deciding the appeal before us we shall consider Mr. Bratcher as the operator of the car.

"AJ's" father brought suit on his behalf to recover damages for the substantial injuries sustained by the boy. At the conclusion of the plaintiff's case, in the Circuit Court for Queen Anne's County, the trial judge gave a directed verdict for each defendant. An appeal was taken from the judgment in favor of Mr. Bratcher.

The issue before this Court is whether, as a matter of law, the infant plaintiff was guilty of contributory negligence, this being the reason assigned by the trial judge for the granting of the directed verdict.

Code, Article 66½ (1967 Repl. Vol.) § 184(a) subjects the operator of a bicycle on a "roadway * * * to the rules of the road * * *," as spelled out in the Article. Section 228(a) of the Article provides:

"(a) Turning—No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with

reasonable safety and then giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by such movement."

Unfortunately, in the instant case "AJ" failed to observe any of the rules of the road and in his own words, "* * * cut across the road." We view the plaintiff's statement that he looked before he crossed the road, in the light of the observation we made in *Sears v. B. & O. Railroad,* 219 Md. 118, 123, 148 A. 2d 366 (1959): "* * * we take account of the oft-repeated truism that if a witness says he looked and did not see, when if he had looked he must have seen, such testimony is unworthy of consideration."

The case at bar is similar to *Billings v. Shaw,* 247 Md. 335, 231 A. 2d 12 (1967), wherein we held that a ten year old boy was old enough to be bound by the rules of the road and may be guilty of contributory negligence should he violate them. In *Billings,* both the plaintiff cyclist and the defendant motorist were traveling in the same direction and the cyclist "shot" to the left across the road as the motorist attempted to pass him. We said, "It is clear to us that the proximate cause of the accident was Billings' sudden and not to be anticipated lunge into the roadway." In the case at bar we have the unanticipated and decisive movement of the cyclist cutting across the path of the oncoming vehicle. We see no substantial distinction between the two cases.

It is true that in *Billings,* the motorist did sound his horn; however, he was in the position of an "overtaking vehicle" passing an "overtaken vehicle" on the highway. In that case the cyclist was on the concrete berm of the highway and an audible signal is to be used when the operator of the overtaking vehicle desires the vehicle he is overtaking to give way to the right, Article 66½, § 219(b). By contrast, in the instant case the cyclist and the motorist were approaching each other from opposite directions. However, the infant plaintiff's sudden cutting across the highway, as in *Billings,* was the proximate cause of the accident and hence he was guilty of negli-

gence directly contributing to the cause of the accident. *Kane v. Williams,* 229 Md. 59, 181 A. 2d 651 (1962). Cf. *Rodriguez v. Lynch,* 246 Md. 623, 627, 229 A. 2d 83 (1969). Considering all of the evidence in a light most favorable to the plaintiffs, including the evidence relating to the degree of sobriety of the defendant, we think the lower court acted correctly in directing a verdict for the defendant. *Trusty v. Wooden,* 251 Md. 294, 297, 247 A. 2d 382 (1968).

We believe Judge Turner properly found the infant plaintiff contributorily negligent, and hence, there is no need for us to consider the question of the defendant's primary negligence. Nonetheless, we deem it appropriate to state, that in our opinion the defendant, as an oncoming motorist, traveling northerly in the northbound lane, had no obligation to sound his horn as he approached the cyclist traveling in a southerly direction in the southbound lane. Article 66½, § 293 (a) provides in pertinent part:

"* * * The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn, but shall not otherwise use such horn when upon a highway."

The infant plaintiff in this case established no facts which presented the question as to whether it was "reasonably necessary" for the defendant to have sounded his horn.

The applicable provision of Article 66½, § 217 would have required "AJ" to have continued traveling upon his right half of the roadway and § 218 requires that the operators of passing vehicles proceeding in opposite directions "give to the other at least one-half of the main travelled portion of the roadway as nearly as possible." The defendant had the right to assume that the infant plaintiff would adhere to rules of the road. Cf. *Thompson v. Terry,* 245 Md. 480, 487, 226 A. 2d 540 (1967). "AJ" was 14 years of age and the law required of him

a duty to exercise reasonable care for his own safety. Were we to hold otherwise, we would be proclaiming a rule of law which would require the operator of every vehicle passing another coming from the opposite direction, regardless of the circumstances, to sound his horn. Certainly the statute possesses no such requirement and we think it would be a tortured construction of the law to so hold in this case. Cf. *Sullivan v. Smith,* 123 Md. 546, 555, 91 A. 456 (1914).

Although the facts are significantly different, we think a fair analogy may be drawn with the case of *Mumford v. United States,* 150 F. Supp. 63 (D.C. Md. 1957) concerning the actions of the cyclist upon which the motorist had a right to rely. In that case an 8 year old cyclist, although not proceeding up a public way, rode his bicycle from a private driveway in the middle of a block in a residential area onto the public street and into the path of an approaching truck. Chief Judge Thomsen speaking for the court stated:

> "If in fact the boy started to ride down the driveway from the parking lot, the driver could have seen him as soon as he came out from behind the house, some 37 feet from the curb, provided his attention had been directed to that point at that time; but the driver would have had the right to assume that the boy would turn to the right or to the left on the sidewalk or in the empty street and would not ride straight across in front of the truck. *Belle Isle Cab Co. v. Pruitt,* 187 Md. 174, 40 A. 2d 537; *R. & L. Transfer Co. v. State,* 160 Md. 222, 153 A. 87. If the boy was riding on the sidewalk, the driver had even less reason to expect the boy to turn into the street and to ride entirely across it without looking. The driver was proceeding at a moderate speed and had his truck under control. It was not his duty to sound his horn every time he saw a boy on a bicycle; but it was his duty

to sound his horn or to take other appropriate measures to avoid an accident as soon as he saw, or should have seen, that the boy was entering the street without looking at the truck." 150 F. Supp. at 66.

In sum we are of the opinion that the proximate cause of the accident was the unexpected and unforeseeable action of the infant plaintiff who violated the rules of the road by invading the lane of the northbound vehicle. *Virginia Freight v. Montgomery,* 256 Md. 221, 229, 260 A. 2d 59 (1969), and *Jones v. Baltimore Transit Company,* 211 Md. 423, 429, 127 A. 2d 649 (1956).

*Judgment affirmed, appellants to pay costs.*